## No. 23-35135

# In the United States Court of Appeals
### FOR THE NINTH CIRCUIT

REBECCA STELMAN; MARK OCHOA; IAN COLEMAN; CAITLYN HOLLERBACH; LOUIS WEATHERSTON; DEMETRIES WRIGHT; JONAS NYARIS; JANNI SAMUEL; MAIRA HERNANDEZ; LINDSAY MOORE, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellees*,

v.

AMAZON.COM, INC.; AMAZON LOGISTICS, INC.,

*Defendants-Appellants*,

and

TEM EXPRESS LOGISTICS LLC, dba TEML dba Temex Logistics; TORITSE ORUBU; J DOE ORUBU; BUTCHIE BOY PRODUCTIONS INC., dba Exselon; JEFFREY BUTCHER, individually and on behalf of the marital community composed of Jeffrey Butcher ad Kathryn Butcher;

(*caption continued on inside cover*)

On Appeal from the United States District Court for the Western District of Washington, No. 2:22-cv-01632 (Martinez, J.)

### BRIEF OF APPELLANTS

Stephanie L. Sweitzer
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
(312) 324-1000

Michael E. Kenneally
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

*Counsel for Amazon.com, Inc. and Amazon Logistics, Inc.*

KATHRYN BUTCHER, individually and on behalf of the marital community composed of Kathryn Butcher and Jeffrey Butcher; ASTEROIDS GROUP LLC, dba ASTG, a Washington limited liability company; KINGSLEY ONUCHUKWU, individually and on behalf of the marital community composed of Kingsley Onuchukwu and J. Doe Onuchukwu; ANAHIT MANUKYAN, individually and on behalf of the marital community composed of Anahit Manukyan and J. Doe Manukyan; BENCHMARK TRANSPORT LLC, a Washington limited liability company; DAMIEN WAGNER, individually and on behalf of the marital community composed of Damien Wagner and J. Doe Wagner; ALDEN RADONCIC, aka Alden Radd, individually and on behalf of the marital community composed of Alden Radoncic and J. Doe Radoncic; THE TOTAL PACKAGE LOGISTICS, LLC, a Washington limited liability company; JEREMY FIXLER, individually and on behalf of the marital community composed of Jeremy Fixler and Heather Fixler; HEATHER FIXLER, individually and on behalf of the marital community composed of Heather Fixler and Jeremy Fixler; NANCY LUNA, individually and on behalf of the marital community composed of Nancy Luna and J. Doe Luna; ASLAR LOGISTICS LLC, a Washington limited liability company; LAURA JOHNSON, individually and on behalf of the marital community composed of Laura Johnson and Joshua Johnson; JOSHUA JOHNSON, individually and on behalf of the marital community composed of Joshua Johnson and Laura Johnson; GOPLAY LOGISTICS LLC, a Washington limited liability company; TRACY PELLETT, Individually and on behalf of the marital community composed of Tracy Pellett and J. Doe Pellett; AVANATOR.COM LLC, a Washington limited liability company; RICHARD ZECH, individually and on behalf of the marital community composed of Richard Zech and J. Doe Zech; POLE POSITION EXPRESS LOGISTICS LLC, a Washington limited liability company; DENNIS HANNAH, individually and on behalf of the marital community composed of Dennis Hannah and J. Doe Hannah; TRUE MANAGEMENT LLC, a Washington limited liability company; CHRISTOPHER LILLEY, individually and on behalf of the marital community composed of Christopher Lilley and J. Doe Lilley; BBW HOLDINGS INC, a Michigan corporation; BARRY WILLIAMS, individually and on behalf of the marital community composed of Barry Williams and J. Doe Williams; PARAGON DELIVERIES INC, Washington corporation; JORDAN OFFUTT, individually and on behalf of the marital community composed of Jordan Offutt and J. Doe Offutt,

*Defendants.*

## CORPORATE DISCLOSURE STATEMENT

Defendants-Petitioners Amazon.com, Inc. and Amazon Logistics, Inc. (collectively, "Amazon") make the following disclosure:

- **Amazon.com, Inc.** has no parent company, and no other publicly held company owns 10% or more of Amazon.com, Inc.'s stock.

- **Amazon Logistics, Inc.** is a wholly owned subsidiary of Amazon.com, Inc.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ....................................................................iv

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION........................................................3

STATEMENT OF THE ISSUE.............................................................4

STATEMENT OF THE CASE...............................................................4

    I.     Statutory Background............................................................4

    II.    Plaintiffs' Allegations...........................................................6

    III.   The District Court's Remand Decision .................................8

SUMMARY OF ARGUMENT ..............................................................9

STANDARD OF REVIEW ..................................................................11

ARGUMENT .......................................................................................11

    I.     The home-state exception cannot apply unless every primary defendant is a citizen of Washington. .................................11

    II.    The twelve DSPs are among the primary defendants in this action and are not all Washington citizens..........................13

         A.    Plaintiffs allege that the twelve DSPs are their direct employers and seek to hold the DSPs responsible for the DSPs' own actions. ...........................................14

         B.    Plaintiffs' joint-employment allegations do not detract from the DSPs' status as primary defendants. ...........15

# TABLE OF CONTENTS
### (continued)

**Page**

      C.    Amazon's potential liability to all class members does not prevent the twelve DSPs from qualifying as primary defendants..................................................19

  III.    CAFA should be construed expansively, and doubts should be resolved against remand. ................................................23

CONCLUSION.......................................................................26

STATEMENT OF RELATED CASES .................................................28

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acad. of Country Music v. Cont'l Cas. Co.*,
  991 F.3d 1059 (9th Cir. 2021) .......................................................................3, 27

*Adams v. W. Marine Prods., Inc.*,
  958 F.3d 1216 (9th Cir. 2020) ........................................................................3, 5

*Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*,
  810 F.3d 335 (5th Cir. 2016) .................................................................................25

*Arias v. Residence Inn by Marriott*,
  936 F.3d 920 (9th Cir. 2019) .................................................................................25

*Brinkley v. Monterey Fin. Servs., Inc.*,
  873 F.3d 1118 (9th Cir. 2017) ..............................................................................11

*Cal. Dep't of Water Res. v. Powerex Corp.*,
  533 F.3d 1087 (9th Cir. 2008) ................................................................................3

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81 (2014) ...............................................................................2, 4, 24, 25

*Davenport v. Lockwood, Andrews & Newnam, Inc.*,
  854 F.3d 905 (6th Cir. 2017) .................................................................................25

*Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*,
  928 F.3d 325 (4th Cir. 2019) .................................................................................25

*Ehrman v. Cox Commc'ns, Inc.*,
  932 F.3d 1223 (9th Cir. 2019) ..............................................................................24

*Gaus v. Miles, Inc.*,
  980 F.2d 564 (9th Cir. 1992) .................................................................................24

*Green v. Skyline Highland Holdings LLC*,
  No. 17-cv-534, 2017 WL 6001498 (E.D. Ark. Dec. 4, 2017) ...........................18

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hargett v. RevClaims, LLC*,
    854 F.3d 962 (8th Cir. 2017) ............................................................26

*Hunter v. Philip Morris USA*,
    582 F.3d 1039 (9th Cir. 2009) ..........................................................24

*Ibarra v. Manheim Invs., Inc.*,
    775 F.3d 1193 (9th Cir. 2015) ..........................................................24

*Jauregui v. Roadrunner Transp. Servs., Inc.*,
    28 F.4th 989 (9th Cir. 2022) ...................................................2, 24, 25

*Kearns v. Ford Motor Co.*,
    No. 05-cv-5644, 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005).................18, 22

*King v. Great Am. Chicken Corp., Inc.*,
    903 F.3d 875 (9th Cir. 2018) ..............................................................4

*Kitchin v. Bridgeton Landfill, LLC*,
    3 F.4th 1089 (8th Cir. 2021) ...........................................................4, 26

*Lewis v. Verizon Commc'ns, Inc.*,
    627 F.3d 395 (9th Cir. 2010) ..............................................................4

*Madison v. ADT, L.L.C.*,
    11 F.4th 325 (5th Cir. 2021) .............................................................22

*Morand-Doxzon v. Del. N. Cos. Sportservice, Inc.*,
    No. 20-cv-1258, 2020 WL 6391194 (S.D. Cal. Nov. 2, 2020) ...................17, 18

*Moreau v. Air France*,
    356 F.3d 942 (9th Cir. 2004) .............................................................16

*Nicholson v. Prime Tanning Corp.*,
    No. 09-cv-6083, 2009 WL 2900042 (W.D. Mo. Sept. 3, 2009).........................18

*Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*,
    485 F.3d 804 (5th Cir. 2007) .............................................................25

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996)................................................................3

*Serrano v. 180 Connect, Inc.*,
   478 F.3d 1018 (9th Cir. 2007) .............................................3

*Simring v. GreenSky, LLC*,
   29 F.4th 1262 (11th Cir. 2022) ......................................4, 26

*Singh v. Am. Honda Fin. Corp.*,
   925 F.3d 1053 (9th Cir. 2019) ....................................*passim*

*Standard Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013)................................................................5

*Villalpando v. Exel Direct Inc.*,
   No. 12-cv-4137, 2012 WL 5464620 (N.D. Cal. Nov. 8, 2012)...................21, 22

*Visendi v. Bank of Am., N.A.*,
   733 F.3d 863 (9th Cir. 2013) ...............................................3

*Vodenichar v. Halcon Energy Props., Inc.*,
   733 F.3d 497 (3d Cir. 2013) .........................................13, 17

*Watson v. City of Allen*,
   821 F.3d 634 (5th Cir. 2016) .............................................20

*Wellons v. PNS Stores, Inc.*,
   No. 18-cv-2913, 2019 WL 2099922 (S.D. Cal. May 14, 2019)........................18

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

STATUTES

28 U.S.C.
§ 1291................................................................................................3
§ 1332(d)(2) ..................................................................................3, 8
§ 1332(d)(2)(A).................................................................................5
§ 1332(d)(3) ......................................................................................6
§ 1332(d)(4)(A).............................................................................5, 9
§ 1332(d)(4)(B)...........................................................................5, 11
§ 1332(d)(5)(B)............................................................................5, 8
§ 1447(d)...........................................................................................3

RULES & REGULATIONS

29 C.F.R. § 825.106(c)........................................................................17

FED. R. APP. P. 4(a)(1)(A) ................................................................4

OTHER AUTHORITIES

151 CONG. REC. H723-01, 2005 WL 387992 (daily ed. Feb. 17, 2005) ................22

S. REP. NO. 109-14 (2005) ................................................................4, 22

WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS (6th ed. 2022) ................11

## INTRODUCTION

Plaintiffs filed this wage-and-hour action in Washington state court, alleging that Defendants denied them rest and meal breaks and certain compensation. Although the litigation satisfies the prerequisites for removal under the Class Action Fairness Act of 2005 ("CAFA"), the District Court remanded the action to state court, under what is known as CAFA's home-state exception. The exception authorizes a remand "only if all primary defendants are citizens of the alleged home state." *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1068 (9th Cir. 2019) (citation and quotation marks omitted). Plaintiffs did not, and cannot, show that all primary defendants in this case are citizens of Washington. So this Court should reverse.

Defendants fall into three categories: (1) the companies that directly employed Plaintiffs as package delivery drivers; (2) the individuals that managed or owned those companies; and (3) Amazon.com, Inc. and Amazon Logistics, Inc. (together, "Amazon"), which contracted for the companies' package delivery services. The District Court decided that Amazon is a primary defendant, but failed to address whether the direct employers *also* qualify as primary defendants. That second question is critical. If the direct employers are primary defendants, then not all primary defendants are Washington citizens, and the home-state exception cannot apply. It is undisputed that one of the direct-employer Defendants is a citizen of Michigan, not Washington.

1

Had the District Court properly applied this Court's precedent, it would have seen that Plaintiffs' direct employers are among this case's primary defendants. Each direct employer is "a principal, fundamental, or direct defendant," not someone that Plaintiffs hope to hold "vicariously or secondarily liable." *Singh*, 925 F.3d at 1068 (citation and quotation marks omitted). By the Complaint's own allegations, the direct employers bear direct responsibility for the working conditions and payment practices that Plaintiffs challenge. Their allegation that Amazon is a "joint employer" of every driver cannot change that. Whatever theory Plaintiffs use to target Amazon, Plaintiffs seek to hold the direct employers directly responsible for their own acts and omissions. The direct employers could face substantial liability. And Plaintiffs have identified no wage-and-hour action in which class members' direct employers were thought to be merely secondary defendants.

The District Court may have reached the wrong result because it started from the wrong premise. It thought it should "presume[]" that removal was improper and "strictly construe" the statute to achieve that outcome. ER-7 (citation omitted). Just the opposite is true: "no antiremoval presumption attends cases invoking CAFA." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992–93 (9th Cir. 2022) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)). Courts must read CAFA "broadly" and resolve doubts in favor of removal. *Id.* (citation omitted). For this reason too, the Court should reverse.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction under 28 U.S.C. § 1332(d)(2), because Plaintiffs are citizens of Washington and Defendant B.B.W. Holdings, Inc., is a citizen of Michigan, there are at least 100 putative class members, and the amount in controversy exceeds $5 million. ER-60–73 (¶¶ 6–40).

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the District Court's order remanding the case to Washington state court is appealable as a final decision and collateral order. *See, e.g.*, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712–15 (1996); *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1096–97 (9th Cir. 2008).

The appeal is not barred by 28 U.S.C. § 1447(d). Section 1447(d) does not bar appeal of "abstention-based remand order[s]" because they are "not based on lack of subject matter jurisdiction or defects in removal procedure." *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1065 (9th Cir. 2021) (quoting *Quackenbush*, 517 U.S. at 712). It is well settled that CAFA's "local controversy and home state exceptions are not jurisdictional," but "a form of abstention." *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1223 (9th Cir. 2020); *see also, e.g.*, *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869–70 & n.3 (9th Cir. 2013); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007). Recognizing these settled principles, courts of appeals properly exercise Section 1291 jurisdiction over remand

orders applying the CAFA exceptions. *See, e.g.*, *Simring v. GreenSky, LLC*, 29 F.4th 1262, 1266 (11th Cir. 2022); *Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1092 (8th Cir. 2021).

The District Court entered its order on February 10, 2023. ER-10. Amazon filed its notice of appeal on February 21, 2023. ER-127–30. The appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(A).

## STATEMENT OF THE ISSUE

Whether CAFA's home-state exception is inapplicable because the twelve companies that allegedly employed Plaintiffs directly, and that allegedly caused the challenged employment practices, are among the case's primary defendants.

## STATEMENT OF THE CASE

### I.    Statutory Background

Congress passed CAFA in 2005 to "significantly expand[] federal jurisdiction in diversity class actions." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010). The statute "strongly favor[s] federal jurisdiction over interstate class actions." *King v. Great Am. Chicken Corp., Inc.*, 903 F.3d 875, 878 (9th Cir. 2018). Its "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (quoting S. REP. NO. 109-14, at 43 (2005)).

4

As relevant here, CAFA creates diversity jurisdiction over class actions with an aggregate amount in controversy over $5 million and at least one "member of a class of plaintiffs [who] is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *see also, e.g.*, *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). There must be at least 100 members of the proposed plaintiff classes in the aggregate. 28 U.S.C. § 1332(d)(5)(B).

"Congress provided exceptions to CAFA jurisdiction, however, to allow truly *intra*state class actions to be heard in state court." *Adams*, 958 F.3d at 1220. The first is the local-controversy exception. It requires courts to decline jurisdiction if two-thirds of the putative class members are citizens of the state where the action was filed, the principal injuries occurred in that state, and a significant defendant is a citizen of that state (but not if any defendant faced a similar class action within the prior three years). 28 U.S.C. § 1332(d)(4)(A).

The other exception is the home-state exception, which has both "mandatory" and "discretionary" versions. *See Adams*, 958 F.3d at 1220–21. The mandatory version requires a district court to decline jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). The discretionary version permits a district court to decline jurisdiction, based on six factors, if "greater than one-third but less than two-thirds

of the members of all proposed plaintiff classes in the aggregate and the primary

defendants are citizens of the State in which the action was originally filed." *Id.*

§ 1332(d)(3).

## II. Plaintiffs' Allegations

Plaintiffs filed this wage-and-hour action in King County Superior Court in

Washington state on September 30, 2022. *See* ER-78. They are ten individuals who

allegedly worked as package delivery drivers. ER-78–85 (¶¶ 3.1–3.10).[1]

Defendants are fourteen companies and eighteen individuals. ER-85–94

(¶¶ 3.11–42). Plaintiffs "worked directly" for twelve of those companies, which the

Complaint calls "Delivery Service Providers" or "DSPs": TEM Express Logistics

LLC, Butchie Boy Productions, Inc., Asteroids Group LLC, Benchmark Transport,

LLC, The Total Package Logistics, LLC, Aslar Logistics LLC, GoPlay Logistics

LLC, Avanator.com LLC, Pole Position Express Logistics LLC, True Management

LLC, B.B.W. Holdings, Inc., and Paragon Deliveries Inc. ER-80, ER-103–04

(¶¶ 1.1, 4.4, 5.1). These DSPs are the entities that pay Plaintiffs. ER-94–100

(¶¶ 4.1.1–21).

Beyond the twelve DSPs, Plaintiffs assert claims against Amazon.com, Inc.

and Amazon Logistics, Inc., and eighteen alleged managers or owners of the twelve

---

[1] The ten Plaintiffs are Rebecca Stelman, Mark Ochoa, Ian Coleman, Caitlyn
Hollerbach, Louis Weatherston, Demetries Wright, Jonas Nyaris, Janni Samuel,
Maira Hernandez, and Lindsay Moore.

DSPs.  ER-85–94 (¶¶ 3.11, 3.12, 3.14, 3.16–17, 3.19–20, 3.22–23, 3.25–27, 3.29–30, 3.32, 3.34, 3.36, 3.38, 3.40, 3.42).  Plaintiffs allege that the Amazon Defendants are "joint employers" because Amazon contracts with the DSPs for delivery of Amazon packages and because Amazon supposedly retains control over Plaintiffs' work.  *See* ER-104–06 (¶ 5.1).

Plaintiffs' core allegation is that Defendants failed to provide certain rest and meal breaks and compensation:

> the Amazon Defendants and DSP Defendants have engaged in a common course of failing to provide employees with the rest and meal breaks to which they are entitled; failing to ensure employees receive the rest and meal breaks to which they are entitled; failing to compensate employees for missed rest and meal breaks; failing to compensate employees for all hours worked; and failing to pay all overtime wages owed.

ER-80–81 (¶ 1.1).  There are six claims for relief.  Five arise under Washington state law and are asserted against all "Defendants," with no distinction between them. ER-110–14 (¶¶ 6.1–10.5).  The sixth arises under Seattle's municipal code and is asserted against Amazon and the Defendants associated with five DSPs that allegedly operated within Seattle.  ER-114–16 (¶¶ 11.1–10).

The Complaint seeks relief on behalf of a proposed class and twenty proposed subclasses.  ER-94–100 (¶ 4.1).  The proposed "Class" includes individuals who, since September 30, 2019, "have performed services for the Amazon Defendants in Washington as non-managerial and non-supervisory package delivery drivers and

have been paid by a contracted delivery service provider that had an Amazon Delivery Provider agreement with one or both of the Amazon Defendants." ER-94 (¶ 4.1.1). The proposed subclasses are narrowed by geography or the identity of the DSP that directly employed the putative class members. ER-94–100 (¶¶ 4.1.2–21). For example, the proposed "B.B.W. Holdings Subclass" includes those who "have been paid by Defendant B.B.W. Holdings, Inc. to perform services for the Amazon Defendants in Washington as non-managerial and non-supervisory package delivery drivers." ER-100 (¶ 4.1.20).

## III. The District Court's Remand Decision

Amazon timely removed this action to federal court under CAFA. *See* ER-59 (¶ 5). As the notice of removal explained, the District Court had subject-matter jurisdiction because Defendant B.B.W. Holdings, Inc. is a citizen of Michigan and Plaintiffs are citizens of Washington, there are 100 or more putative class members, and the amount in controversy exceeds $5 million. ER-60–73 (¶¶ 6–40); *see* 28 U.S.C. §°1332(d)(2), (d)(5)(B). Plaintiffs' motion to remand did not contest whether Amazon had sufficiently established the prerequisites for CAFA removal. In fact, the Complaint itself alleges that B.B.W. Holdings, Inc. is a Michigan corporation. ER-93 (¶ 3.39). Instead, Plaintiffs' argument for remand was that CAFA's home-state exception required the District Court to decline jurisdiction. *See* ER-47–54. The key dispute was whether the two Amazon Defendants are the only primary

8

defendants or whether the twelve DSPs, including B.B.W. Holdings, qualify as well. *See* ER-15, ER-17–24; ER-29, ER-31–35; ER-51–54.[2]

A week after briefing was complete, and without oral argument, the District Court granted Plaintiffs' motion. ER-4–10. It did not deny that Amazon sufficiently established the jurisdictional prerequisites for CAFA removal, but it found that the home-state exception applied. *Id.* The two Amazon Defendants qualified as primary defendants, in its view, because Amazon is "alleged to be directly responsible for the harm" and could be liable to all putative class members. ER-8–9. The court did not discuss whether the twelve DSPs also qualify as primary defendants. *See id.*

Amazon moved to stay the District Court's remand order pending this appeal, but the District Court denied the motion. ER-11–12.

## SUMMARY OF ARGUMENT

The District Court's remand order rests on the view that Amazon qualifies as a primary defendant. But this view about Amazon cannot justify remand. The law is clear that the home-state exception applies only if *all* primary defendants are forum-state citizens. The District Court made no finding that the twelve DSPs, including the Michigan citizen, fail the test for primary-defendant status.

---

[2] Plaintiffs did not contest the notice of removal's explanation for why the local-controversy exception is inapplicable: several similar wage-and-hour actions were filed during the three years before this lawsuit. ER-74–75 (¶¶ 42–44); *see* 28 U.S.C. § 1332(d)(4)(A).

Nor could that finding be defended. Plaintiffs allege that the twelve DSPs directly employed them and paid their salaries. They even allege that working conditions and payment practices were set by the DSPs' management. When a lawsuit challenges working conditions and payment practices, each defendant directly responsible for those subjects counts as a primary, fundamental, or direct defendant. Although Plaintiffs claim that Amazon is also responsible for the challenged conduct, their joint employment allegations do not pretend that Amazon is more directly responsible for drivers' meal and rest periods or payments than the twelve direct employers. Plaintiffs do allege that Amazon, unlike each individual DSP, is liable to all class members. But that at most explains why Amazon should qualify as a primary defendant, not why the direct employers should not. Plaintiffs seek to impose substantial liability on the DSPs, too. And no authority supports denying primary-defendant status to the direct employers in a wage-and-hour action.

The District Court's analysis was tainted by an explicit presumption against removal. That presumption violates clear Supreme Court and Ninth Circuit precedent that there is no antiremoval presumption under CAFA. The statute strongly favors removal and should be read broadly. Appellate courts across the country therefore read CAFA's exceptions narrowly and resolve doubts in favor of federal jurisdiction. This Court should take the same approach and reject Plaintiffs' attempt to expand the home-state exception beyond its proper bounds.

10

## STANDARD OF REVIEW

This Court reviews de novo a remand under CAFA's mandatory home-state exception. *E.g.*, *Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017).

## ARGUMENT

### I. The home-state exception cannot apply unless every primary defendant is a citizen of Washington.

CAFA's home-state exception applies only when "the primary defendants[] are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Under this language, *every* primary defendant must be a citizen of the forum state: "[B]y using the word 'the' before the words 'primary defendants' rather than the word 'a,' CAFA requires remand under the home state exception only if all primary defendants are citizens of the alleged home state." *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1068 (9th Cir. 2019) (citation, brackets, and some quotation marks omitted); *see also* 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 6:20 (6th ed. 2022) ("Most courts agree that the use of the definite article in 'the primary defendants' requires that all of the primary defendants be citizens of the state in which the action was originally filed."). "It is insufficient that only some of the primary defendants are citizens of that state." *Singh*, 925 F.3d at 1068.

The District Court never acknowledged this important point. *See* ER-8–9. Although it cited *Singh*'s test for primary-defendant status, it did not mention

11

*Singh*'s rule that every primary defendant must be a forum-state citizen. *Id.* The District Court seemed to think it was dispositive that the Amazon Defendants qualify as primary defendants. ER-9. Its order focused exclusively on Amazon's status and rested on two findings about Amazon: (1) "Amazon Defendants are alleged to be directly responsible for the harm to the proposed class(es)," and (2) "Amazon Defendants' potential exposure to the proposed Class is much greater relative to the exposure of other Defendants." *Id.* Then, in its concluding paragraph, the District Court stated that the home-state exception applied because "Amazon is a principal, fundamental, or direct defendant." *Id.* The District Court's order denying a stay pending appeal repeated this claim that remand was proper because "Amazon is a principal, fundamental, or direct defendant." ER-12.

But under *Singh*'s clear instructions, whether Amazon is a primary defendant is not dispositive—or particularly relevant. For the home-state exception to apply here, "*all* of the primary defendants [must] be citizens of the state in which the action was originally filed." *Singh*, 925 F.3d at 1068 (emphasis added) (citation omitted). The critical question then—and the parties' sole dispute—is whether the twelve DSPs, including B.B.W. Holdings, qualify as primary defendants.

The District Court never faced that question head-on. It never applied this Court's test (or any other test) for primary defendants to the twelve DSPs. *See* ER-8–9. Nor did it discuss any case law addressing similar questions. Had it done so,

as discussed next, it would have had to conclude that the twelve DSPs are among the primary defendants in this action, even if the two Amazon entities are primary defendants, too.

## II. The twelve DSPs are among the primary defendants in this action and are not all Washington citizens.

CAFA "does not define 'primary defendant,'" and courts have "looked to 'numerous factors' to define the term." *Singh*, 925 F.3d at 1067 (citation omitted). The ultimate question, however, is "whether a defendant is a 'principal,' 'fundamental,' or 'direct' defendant." *Id.* at 1068 (citation and some quotation marks omitted).

To answer that question, trial courts must "first assume that all defendants will be found liable" and "then consider whether the defendant is sued directly or alleged to be directly responsible for the harm to the proposed class or classes, as opposed to being vicariously or secondarily liable." *Id.* Courts should "also consider the defendant's potential exposure to the class relative to the exposure of other defendants." *Id.* The *Singh* Court drew these factors from Third Circuit precedent asking whether "plaintiffs seek to hold the defendant responsible for its own actions, as opposed to seeking to have it pay for the actions of others," and also "whether, given the claims asserted against the defendant, it has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable." *Id.* at 1067–68 (quoting *Vodenichar v. Halcon*

*Energy Props., Inc.*, 733 F.3d 497, 505–06 (3d Cir. 2013)).  *Singh* emphasized, though, that "[c]ourts should not treat these considerations as exhaustive or apply them mechanistically."  *Id.* at 1068.

Under *Singh*'s framework, the twelve DSPs qualify as primary defendants. And because one of those twelve—B.B.W. Holdings—is undisputedly a citizen of Michigan, not Washington, the home-state exception does not apply.  *See* ER-61– 62 (¶ 11); ER-93 (¶ 3.39).

### A.    Plaintiffs allege that the twelve DSPs are their direct employers and seek to hold the DSPs responsible for the DSPs' own actions.

The twelve DSPs plainly satisfy *Singh*'s direct-liability factor: they are "sued directly or alleged to be directly responsible for the harm to the proposed class or classes, as opposed to being vicariously or secondarily liable."  *Singh*, 925 F.3d at 1068.  The Complaint alleges that Plaintiffs and similarly situated delivery drivers "worked directly for an Amazon Delivery Service Provider."  ER-104 (¶ 5.1); *see also* ER-103 (¶ 4.4) ("All Plaintiffs . . . have worked directly for an Amazon DSP[.]"); ER-104 (¶ 5.1.1) ("Plaintiffs and members of the Class and Subclasses work for so-called Delivery Service Providers on Amazon routes[.]").  The Complaint also alleges that the putative class members are "paid by [their] contracted delivery service provider," rather than Amazon itself.  ER-94 (¶ 4.1.1); *see* ER-94–100 (¶¶ 4.1.2–4.1.21) (alleging that members of each proposed subclass were "paid by" the relevant DSP).  It even alleges that the managers/owners of the

twelve DSPs are responsible for "determining certain employment practices" and "exercising certain control over how the company's employees are paid and their working conditions." *E.g.*, ER-93 (¶ 3.40).

These employment practices form the crux of the Complaint. Plaintiffs allege insufficient meal and rest breaks and compensation. ER-80–81 (¶ 1.1). The DSPs are thus "allegedly responsible for the direct harm to [drivers]." *Singh*, 925 F.3d at 1069. And Plaintiffs "seek to hold [each DSP] responsible for its own actions, as opposed to seeking to have it pay for the actions of others." *Id.* at 1067 (citation omitted).

By Plaintiffs' own allegations, then, each of the twelve DSPs "is a 'principal,' 'fundamental,' or 'direct' defendant." *Id.* at 1068 (citation omitted). The twelve DSPs are Plaintiffs' "direct" employers and the entities that pay Plaintiffs, and Plaintiffs seek to impose liability for employment conditions and payment practices.

### B. Plaintiffs' joint-employment allegations do not detract from the DSPs' status as primary defendants.

The District Court's first finding about Amazon was that Amazon is allegedly "directly responsible for the harm to the proposed class(es)." ER-9. But at most, the Complaint merely alleges that Amazon was Plaintiffs' "joint employer[]" alongside their direct employers, the DSPs. ER-104 (¶ 5.1). Plaintiffs have not shown—or even alleged—that Amazon is directly responsible for the complained-of employment practices for rest and meal breaks and driver compensation. On the

15

contrary, the Complaint expressly alleges, as noted above, that "control over how [drivers] are paid and their working conditions" is exercised at the DSP level. *E.g.*, ER-93 (¶ 3.40).

In contrast, Plaintiffs' sparse allegations about Amazon's purported control do not directly implicate breaks or payments. *See* ER-104–06 (¶¶ 5.1.1-5.1.16). Not even Amazon's alleged control over "driver schedules and work hours," directly implicates those issues. *See* ER-104–05 (¶ 5.1.2). Amazon's alleged control over scheduling amounts to requiring pickups at "Amazon distribution center[s]" and requiring deliveries during "certain time frames." *See id.*

In fact, Plaintiffs fault Amazon for allegedly "fail[ing] to pay their *Delivery Service Providers* a sufficient amount to ensure the Delivery Service Providers pay all required overtime wages to second-tier delivery drivers." ER-110 (¶ 5.5.5) (emphasis added). This allegation reinforces that the DSPs, not Amazon, are directly responsible for paying wages to drivers, and that Amazon is responsible only indirectly, if at all. Amazon's liability is thus "contingent on a threshold finding" that the DSPs' conduct violated the wage-and-hour laws, and Plaintiffs seek to have Amazon "pay for the actions of others." *Singh*, 925 F.3d at 1067–68 (citations omitted).[3]

---

[3] The law sometimes distinguishes between "primary" and "secondary" joint employers, based on level of responsibility to hire and fire, make assignments, and provide compensation. *See, e.g.*, *Moreau v. Air France*, 356 F.3d 942, 946 (9th Cir.

Plaintiffs do make conclusory allegations that all defendants "engaged in a common course" of alleged conduct and omissions. ER-106–10 (¶¶ 5.2-.5). But lumping all Defendants together as having supposedly "engaged in a common course of" behavior cannot show that Amazon has primacy over its co-Defendants. If anything, it reveals that all Defendants are alleged to be equally responsible and should all be considered primary. *See, e.g.*, *Vodenichar*, 733 F.3d at 506 (finding all defendants to be primary defendants because "Plaintiffs allege that each defendant is directly liable, appear to apportion liability equally among the defendants, and seek similar relief from all defendants").

That conclusion finds further support in the most relevant case law addressing the home-state exception in wage-and-hour litigation. In *Morand-Doxzon v. Delaware North Cos. Sportservice, Inc.*, No. 20-cv-1258, 2020 WL 6391194, at *5 (S.D. Cal. Nov. 2, 2020), a plaintiff asserted meal and rest period and overtime claims against her direct employer and that company's parent corporation under a joint-employer theory. The court determined that the home-state exception did not apply because, under *Singh*, the two alleged joint employers both qualified as primary defendants. *Id.* The plaintiff alleged "that she and other putative class members were employed by both," made "the same allegations against both," and

---

2004) (citing 29 C.F.R. § 825.106(c)). Plaintiffs' allegations about the twelve DSPs' role as their direct employers and payors of compensation show that the twelve DSPs, not Amazon, would be Plaintiffs' primary joint employers.

17

sought "the same relief from both." *Id.* Similarly, in *Wellons v. PNS Stores, Inc.*, No. 18-cv-2913, 2019 WL 2099922, at \*5 (S.D. Cal. May 14, 2019), the home-state exception did not apply because the out-of-state defendant was "responsible" for the challenged employment practices.

The District Court cited no contrary case holding that a direct employer, directly responsible for challenged employment practices, somehow was not a primary defendant. *See* ER-19–20. Courts instead hold that when a plaintiff asserts "theories of direct liability against all Defendants" and "fails to distinguish among defendants as to theories of liability, all are considered primary defendants." *Nicholson v. Prime Tanning Corp.*, No. 09-cv-6083, 2009 WL 2900042, at \*2 (W.D. Mo. Sept. 3, 2009); *see also, e.g.*, *Kearns v. Ford Motor Co.*, No. 05-cv-5644, 2005 WL 3967998, at \*8 (C.D. Cal. Nov. 21, 2005) ("Plaintiff's own allegations establish that both Ford and Claremont Ford are potentially directly liable to the plaintiff class"). And courts likewise find all defendants to be primary when the plaintiff alleges "that all defendants are engaged in a common enterprise and should be held joint and severally liable for their conduct." *Green v. Skyline Highland Holdings LLC*, No. 17-cv-534, 2017 WL 6001498, at \*4 (E.D. Ark. Dec. 4, 2017). The Complaint's joint-employer allegations therefore only confirm that the twelve DSPs are among the primary defendants in this action.

**C.** **Amazon's potential liability to all class members does not prevent the twelve DSPs from qualifying as primary defendants.**

The District Court's second finding was that "Amazon is the only Defendant in this case that is potentially liable to every class member." ER-9. Perhaps the court thought that Amazon's alleged connection to all putative class members prevented Plaintiffs' respective direct employers from also qualifying as primary defendants. That view would conflict with *Singh* and other home-state exception rulings.

While *Singh* tells courts to consider a defendant's potential exposure to the class along with the direct-liability factor, it never suggested that *both* factors must be met in every case. In fact, it would contradict *Singh* to treat one defendant's potential liability to every putative class member as precluding other defendants from qualifying as primary defendants. In *Singh*, some car buyers sued their car dealerships, the dealerships' owner, and a financing company. 925 F.3d at 1058 & n.1, 1068–69. The financing company was not a primary defendant, despite its potential liability to all class members, but the "Dealership Defendants"—the car dealerships and the owner—*were* primary defendants because they were "allegedly responsible for the direct harm to consumers: improperly charging for vehicle add-ons." *Id.* at 1069. Each car dealership, of course, would have made improper charges only for vehicles sold to its own customers. But even though each dealership's potential liability was limited to a subset of the class (the dealership's

19

own customers), each still counted as a primary defendant. Similarly, here, the fact that each DSP's potential liability is confined to its own employees does not prevent each DSP from qualifying as a primary defendant.

Among other cases, *Singh* relied on *Watson v. City of Allen*, 821 F.3d 634 (5th Cir. 2016), in which the Fifth Circuit reached a similar outcome. The plaintiff in *Watson* was challenging red-light cameras at traffic intersections and sued the state of Texas, fifty-three Texas municipalities, and several private companies. *Id.* at 637. He contended that the state statute authorizing municipalities to adopt red-light-camera ordinances, and the municipal ordinances themselves, were unlawful. *Id.* Texas was potentially liable to all putative class members, but each municipality's potential liability was limited to the drivers harmed by that municipality's own ordinance. *See id.* at 641 ("[A]ll of the putative plaintiffs will have claims against Texas, against at least one municipality, and against at least one of the private companies."). Yet even though the municipalities did not face exposure to the whole class, the Fifth Circuit ruled that "the state *and* the municipalities [were] primary defendants" because they together "had the 'primary role in the alleged' violations." *Id.* (emphasis added) (citation omitted). The three private companies, in contrast, were not primary defendants because their liability was "contingent" on other defendants' liability. *Id.*

The DSPs' alleged liability here is not contingent on Amazon's alleged liability. If anything, the opposite is true: Amazon's liability may depend on the DSPs' liability for improper employment and payment practices. *See supra* p. 16. As alleged in the Complaint, the DSPs are more directly responsible than Amazon for the purported meal and rest period violations and purported under-compensation. And DSPs as a group could be liable to all putative class members. Because the class is limited to drivers "paid by a contracted delivery service provider," it contains no driver who worked directly for Amazon. ER-94 (¶ 4.1.1). Refusing to find that the DSPs are primary defendants because they are liable only to their own employees would be the sort of "mechanical review" that *Singh* teaches "is inappropriate." 925 F.3d at 1069.

Properly understood, *Singh* shows that the direct-liability and relative-exposure factors are each proper grounds for finding primary-defendant status. That is how courts have understood the relationship between these factors: significant exposure can make up for a lack of direct liability. *See, e.g.*, *Villalpando v. Exel Direct Inc.*, No. 12-cv-4137, 2012 WL 5464620, at *9 (N.D. Cal. Nov. 8, 2012) ("[A] defendant may be considered a 'primary defendant' if, based on the allegations in the complaint, it has substantial exposure to significant portions of the proposed class in the action, or is allegedly liable to the vast majority of the members of the proposed classes, *even if that defendant faces only derivative liability*." (emphasis

added)); *Madison v. ADT, L.L.C.*, 11 F.4th 325, 329 (5th Cir. 2021) (holding that a corporation was a primary defendant because plaintiff hoped "to gain access to [the corporation's] deep pockets," even though plaintiff did not assert claims alleging that the corporation was directly liable for its employee's misconduct). But facing direct liability is sufficient for primary-defendant status. *See Villalpando*, 2012 WL 5464620, at *9 ("[T]he Court finds that a defendant who, based on the allegations in the complaint, has some direct liability to the plaintiffs, is a primary defendant."); *Kearns*, 2005 WL 3967998, at *8 ("[T]he usage of the term as in tort law [is] the most appropriate and workable: a 'primary defendant' is any with direct liability to the plaintiffs.").

Viewing the two *Singh* factors as alternative paths to primary-defendant status also fits the legislative history. *Cf. Singh*, 925 F.3d at 1067 (noting that the Third Circuit's articulation of these factors "rel[ied] heavily on CAFA's legislative history"). In a floor statement, Representative Goodlatte stated that "the term 'primary defendant' should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes, as opposed to simply a few individual class members." 151 CONG. REC. H723-01, H732, 2005 WL 387992 (daily ed. Feb. 17, 2005); *accord* S. REP. NO. 109-14, at 43. This deliberately expansive language—"should include any person . . . , particularly

22

any defendant"—does not limit other grounds for finding primary-defendant status or provide a necessary precondition for such status.

In any event, the twelve DSPs meet the legislative history's description. The DSPs have "substantial exposure to significant portions of the proposed class," not just a few individuals. The Complaint concedes that Plaintiffs seek "significant relief" from the "DSP Defendants," not just Amazon, and that their alleged conduct "forms a significant basis for the claims asserted." ER-81 (¶ 2.4). The Complaint even proposes subclasses for each of the twelve DSPs, alleging that the members of every subclass are "so numerous that joinder of all such members is impracticable." ER-101 (¶ 4.2). B.B.W. Holdings allegedly "employed Plaintiff Hernandez and scores of other employees in the state of Washington." ER-93 (¶ 3.39). Given these allegations, the DSPs have more than enough exposure to qualify as a primary defendant, even if their alleged direct liability were not sufficient on its own.

## III. CAFA should be construed expansively, and doubts should be resolved against remand.

If there were any doubt about how to apply the home-state exception here, the Court should resolve it in favor of federal jurisdiction, not against it. The District Court erroneously adopted the opposite presumption. It began by quoting inapplicable, non-CAFA precedent: "Typically, it is presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." ER-7 (brackets and

quotation marks omitted) (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009)). The District Court thought that courts should "strictly construe the removal statute against removal jurisdiction." *Id.* (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)).

The District Court was wrong to apply these antiremoval presumptions. The Supreme Court has made clear that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 89. Just the opposite, CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* (citation omitted). This Court has likewise stressed that CAFA permits "no antiremoval presumption," *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019) (citation omitted), and that "Congress intended CAFA to be interpreted expansively," *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

This Court has properly reversed trial court rulings that disfavored CAFA removal as the District Court did here. For instance, in *Jauregui*, the district court erred by "putting a thumb on the scale against removal." 28 F.4th at 992. Like the District Court below, it invoked *Gaus* for the proposition that courts "strictly construe the removal statute against removal jurisdiction." *Jauregui*, 28 F.4th at 993

24

(citation omitted). But this Court explained why that is wrong. Courts should instead adopt "an expansive understanding of CAFA" and should not presume "that removal under CAFA should be met with a level of skepticism and resistance." *Id.*; *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (expressing concern that "remnants of [an] antiremoval presumption seem to persist" in CAFA rulings despite *Dart Cherokee*).

Plaintiffs convinced the District Court to resolve doubts against removal. *See* ER-16–17. But the court should have followed the wealth of CAFA authority that Amazon identified. *See* ER-31. Appellate cases from across the country instruct that CAFA's limited exceptions should be construed narrowly, with doubts resolved against remand. *See, e.g.*, *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 342 (4th Cir. 2019) ("CAFA's removal exceptions must be narrowly construed."); *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 342 (5th Cir. 2016) ("Underlying our analysis is our need to resolve lingering doubts in favor of exercising federal jurisdiction when an exception to [CAFA] jurisdiction is asserted."); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 810 (5th Cir. 2007) ("[T]he local controversy and home state exceptions should be construed narrowly and resolved in favor of federal jurisdiction."); *Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 910 (6th Cir. 2017) ("[C]ourts agree that '[a]ny doubt about the applicability of the

25

local-controversy exception [should be] resolved against the party seeking remand.'" (citation omitted)); *Hargett v. RevClaims, LLC*, 854 F.3d 962, 965 (8th Cir. 2017) ("[A] district court should resolve any doubt about the applicability of CAFA's local-controversy exception against the party who seeks remand." (citation, quotation marks, and ellipsis omitted)); *Simring*, 29 F.4th at 1268 ("Because the local controversy exception is a narrow one, we must resolve any doubts against this exception to CAFA.").

As the Eighth Circuit recently explained, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress, abstention is an extraordinary and narrow exception to that duty, and thus only the clearest of justifications will justify abstention." *Kitchin*, 3 F.4th at 1093 (citations and quotation marks omitted). The District Court incorrectly took the opposite approach and cut its analysis short after holding that Amazon was a primary defendant. Plaintiffs failed to provide justification for not treating their direct employers as among the primary defendants in this action, and the District Court erred in remanding the case to state court.

## CONCLUSION

For all these reasons, the Court should reverse the District Court's remand order, and it should direct the District Court to recall its remand and notify the King

County Superior Court that it has resumed jurisdiction over the action. *See Acad. of Country Music*, 991 F.3d at 1070.


Dated:  April 24, 2023

Respectfully submitted,

s/ Michael E. Kenneally

STEPHANIE L. SWEITZER
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL  60606
(312) 324-1000

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 739-3000

*Counsel for Amazon.com, Inc. and Amazon Logistics, Inc.*

## STATEMENT OF RELATED CASES

In accordance with Ninth Circuit Rule 28-2.6, I state that I am unaware of any related cases currently pending in this Court. On April 20, 2023, the Court denied Amazon's petition for an expedited appeal of the District Court's order under 28 U.S.C. § 1453(c), which was docketed as case number 23-80017.


Dated: April 24, 2023                    s/ Michael E. Kenneally
                                         MICHAEL E. KENNEALLY

                                         *Counsel for Amazon.com, Inc.*
                                         *and Amazon.com Logistics, Inc.*

28

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s) 23-35135** _____

I am the attorney or self-represented party.

**This brief contains 6,103_____ words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App.

P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
      Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select
      only one)*:
      [ ] it is a joint brief submitted by separately represented parties;
      [ ] a party or parties are filing a single brief in response to multiple briefs; or
      [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** s/ Michael E. Kenneally_____ **Date** April 24, 2023_____
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                                          *Rev. 12/01/18*